BEATRICE D. PHILLIPS and JOHN H. PHILLIPS, JR.,
Defendants-Below,
Appellants,

*vs.*

LIBERTY MUTUAL INSURANCE COMPANY, a Corporation of the State
of Massachusetts, Plaintiff Below,
Appellee.

*Supreme Court, On Appeal, November 6, 1967.*

*Reargument Denied, November 20, 1967.*

*Clement C. Wood,* of Allmond & Wood, Wilmington, for appellants.

*William Prickett,* of Prickett, Ward, Burt & Sanders, Wilmington, for appellee.

Wolcott, C. J. and Carey and Herrmann, JJ., sitting.

CAREY, Justice: This is an appeal from an interlocutory order of the Court of Chancery. We previously denied a motion to dismiss, but limited our present review to three matters: (1) whether the Court below has jurisdiction of the case; (2) whether the Court below erred in dismissing the original party plaintiff and realigning another defendant as plaintiff; (3) whether the Court below was correct in ordering that the parties must obtain other counsel if their present attorneys are required to testify. *Del., 232 A.2d 101.*

The appellants, Beatrice D. Phillips and John H. Phillips, Jr., her husband, owned a property in Wilmington which was badly damaged by an explosion of gas in a pipeline of Delaware Power and Light Co. (Delaware). Mrs. Phillips was injured in the explosion. Appellants obtained a judgment against Delaware in the Superior Court for a sum in excess of $68,000. Appellee, Liberty Mutual Insurance Co. (Liberty), was the liability insurer of Delaware. It was informed in some manner that Firemen's Fund Insurance Co. and Blue Cross and Blue Shield, Inc. claimed subrogation rights to a part of the money due on the judgment. It also knew that its affiliate Liberty Mutual Fire Ins. Co. (Fire) had paid $18,000 to the Phillips and their mortgagee under a comprehensive policy, that Fire claimed the right of subrogation for this payment, and that the appellants refused to recognize that right. Accordingly, Liberty filed this action in the Court of Chancery, alleging that it was ready to pay the judgment in full but could not do so directly without subjecting itself to the risk of double liability and that its reputation and good will would suffer irreparable damage if execution process should be issued against Delaware. It prayed that it be permitted to pay into Court the entire amount due, that the Court declare the rights of the parties, that Fire be reimbursed for the amount of its payments and that other proper relief be granted.

The Court thereafter issued a restraining order against the issuance of any execution on the Superior Court judgment. The appellants filed an answer, a cross-claim and a counterclaim, followed by a motion for summary judgment as to its allegation that Fire has no right of subrogation. It also moved to dismiss on the ground that the Chancery Court had no jurisdiction. The Court ultimately held that the situation was such as to justify recourse to equity, and that summary judgment could not be granted because there are factual issues which must be resolved at trial.

Meanwhile, the amounts due to Blue Cross and Blue Shield, Inc. and to Firemen's Fund Insurance Co. were agreed upon. The parties stipulated that the amount due on the judgment be deposited in the Court of Chancery, that the sums due the two corporations last named be paid out of that fund, and that the balance be paid over to the appellants, less an amount sufficient to satisfy Fire's claim, which should remain on deposit pending the outcome of this case. They also agreed that a temporary injunction should be issued against any execution in the law Court. This agreement was carried out with approval of the Chancery Court.

In denying the motion to dismiss and the motion for summary judgment, the Vice Chancellor entered an order dismissing all parties except Fire and the appellants and realigning Fire as the party plaintiff. He directed that the case go to trial on certain specified issues. Finally, he ordered that if counsel are required to testify concerning any of those issues, the litigants should arrange for other trial counsel.

I

The appellants contend, first, that the Court below had no jurisdiction over the case from its inception because (a) there was no real "threat" of an execution, wherefore no injunctive relief was needed; (b) there was an adequate remedy at law because the Superior Court could have stayed execution and Fire's right to payment could have been determined in a law action.

We think it is unnecessary to pass upon these contentions. Possibly the Court below was correct in its finding that injunctive relief was necessary; possibly jurisdiction existed because the complaint presented a typical case of interpleader. However, in view of what has occurred already through agreement of the parties, those issues are of no real present concern. We will look to the present posture of the case, since there would be no reason for directing its transfer to Superior Court if the case as it now stands is a proper one for determination in Chancery.

Presently, the suit is one between the real parties in interest for the enforcement of an alleged right, through subrogation, to be repaid out of the fund in Court for monies originally paid to appel-

lants and their mortgagee\*. We think the Court below has jurisdiction and acted properly in realigning the parties.

 Subrogation is a creature of equity, historically cognizable in our Court of Chancery. *Olivere v. Taylor,* 31 *Del.Ch.* 53, 65 *A.2d* 723; *Kimberly & Carpenter v. National Liberty Ins. Co.,* 5 *W.W. Harr.* 63, 157 *A.* 730, 734; *Ierardi v. Farmers' Trust Co. of Newark,* 4 *W.W.Harr.* 246, 151 *A.* 822; 50 *Am.Jur.* 773; *Restatement, Restitution,* § 162; 83 *C.J.S. Subrogation* § 64, p. 715; 16 *Couch on Insurance 2d* § 61.20. Even where recovery is permitted in an action at law on a theory of implied contract, the equitable jurisdiction still exists. 4 *Pomeroy's Equity Jurisprudence (5th Ed.)* § 1416 etc.

Assuming, as we must, that Fire can prove its right to repayment out of the fund recovered from the tort feasor, it may enforce that right in our Court of Chancery. This right of subrogation goes beyond the relief which could be obtained in a suit on an implied contract in Superior Court in that plaintiff, if it wins, will be paid out of the particular fund, as against the possible need to effect a recovery through execution.

Appellants have attempted in their brief to argue that Fire has in fact no right to repayment. This contention goes beyond the matters we have agreed to review; moreover, it seeks a present determination of matters which the Vice-Chancellor has correctly held can be determined only after trial.

For the foregoing reasons, the action of the Court below in retaining jurisdiction of the case and in realigning the parties after dismissing those who no longer are interested must be affirmed.

## II

In his order, the Vice-Chancellor included the following provision:

"(9) That, if counsel for the parties are required to testify on any of the above issues, litigants arrange for noninvolved trial counsel."

---

\* Fire received no assignment from these payees.

The Appellants object to this paragraph of the order upon the ground that it may have the effect of depriving them of the services of the attorney who has handled their litigation since it commenced in 1960, is thoroughly familiar with the entire matter and is accordingly in better position to represent them in the pending suit than a new attorney would be. They contend that Fire should not be permitted to eliminate that counsel from the case by calling him to the stand or taking his deposition which may be introduced at the trial.

█ We would, of course, not countenance any practice of calling counsel to testify for the purpose of forcing him out of the case. *Galarowicz v. Ward*, 119 *Utah* 611, 230 *P.2d* 576. Fire vehemently denies that it has any such purpose. One of its principal contentions will be, according to the brief, that appellants are estopped, by reason of statements made by counsel to Fire's adjuster, to deny its right to repayment of the money which it paid to the appellants and their mortgagee.

Strictly speaking, the only problem before us is whether the order entered by the Court below is correct. Canon of Professional Ethics No. 19, which has been adopted in this State, reads as follows:

> "19. APPEARANCE OF LAWYER AS WITNESS FOR HIS CLIENT.
>
> When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in Court in behalf of his client."

The language of that Canon refers to an attorney's appearance as a witness *for* his client; it does *not* mention being called as a witness *against* the client. Thus, the Canon does not expressly require withdrawal upon being called as a witness against the client. We recognize, of course, that such adverse testimony might create an extremely embarrasing problem to the attorney with respect to further representation of that client. But that is not our problem here.

█ To the extent that the order entered below is consistent with Canon 19, it is clearly correct; to the extent that it goes beyond the Canon, it may or may not be justified depending upon the circum-

stances. We think the only disposition we can make at this time is to direct that it be modified to conform to the Canon. Future developments may justify the Court in entering a further order along the present lines, if such be necessary.

■■ We are obliged to limit our present holding because we cannot predict just what the future situation may be. Clearly, the information which Fire says it intends to elicit is not privileged. It may be of vital importance to Fire. Aside from the privilege question, we are not aware of any evidentiary rule against calling an attorney to the stand, although the better practice is that it should not be done except in cases of real necessity. *Rude v. Algiers,* 11 *Wis.2d* 471, 105 *N.W.2d* 825; *Food Fair Stores, New Castle, Inc. v. Howard, Del.,* 212 *A.2d* 405; 3 *Jones on Evidence* (*5th Ed.*) § 834; 97 *C.J.S. Witnesses* § 71, p. 465; 58 *Am.Jur.* 259.

■ At one stage of this case, Fire gave notice of the taking of the deposition of appellant's counsel. Upon motion, the Court granted a protective order against it. Shortly before this appeal was taken, Fire gave a new notice but we understand that nothing more has occurred with respect to it. We find no disqualification in the taking of the deposition of appellants' attorney by Fire. If the deposition is not offered and admitted into evidence, there is no problem under the Canon. If the deposition is offered by Fire and admitted upon its application, the Canon is not violated because the attorney is not a witness *for* his client. The Canon will be violated only if the appellants attempt to introduce such deposition.

The order entered below, modified as mentioned herein, will be affirmed.

## ON PETITION FOR REARGUMENT

■ Counsel for appellants has asked for reargument, pointing out that Liberty posted an injunction bond in the Court below when that injunction was issued. He argues that dismissal of Liberty from the case may mean that the bond is terminated, thus depriving appellants of any right of recovery under the bond.

Although this question was mentioned in the original briefs, we made no ruling because we found it unnecessary to pass upon the propriety of issuing the injunction. The status of the bond was not

expressly ruled upon by the Vice-Chancellor; conceivably, the problem may become moot. However, in order to preserve any rights these appellants may have in this respect, we consider that the best course is to direct that Liberty be retained as a party, at least until it becomes clear that there is no loss recoverable under that bond. The order below should be modified accordingly. The petition for reargument is denied.