408 So.2d 587 (1981)
STATE ex rel. Gordon G. OLDHAM, Jr., State Attorney for the Fifth Judicial Circuit, Petitioner,
v.
The Honorable Ernest C. AULLS, Jr., Circuit Judge, Respondent.
No. 81-1061.
District Court of Appeal of Florida, Fifth District.
November 25, 1981.
Rehearing Denied January 12, 1982.
*588 Jim Smith, Atty. Gen., Tallahassee, and Robert J. Landry, Asst. Atty. Gen., Tampa, for petitioner.
William H. Stone, Clermont, and Robert Q. Williams, Tavares, for respondent.
SHARP, Judge.
The state attorney for the Fifth Judicial Circuit petitions for a writ of certiorari to review an order of the circuit court for Lake County disqualifying his office from prosecuting a criminal defendant. For the reasons discussed below certiorari is granted; the order is quashed; and the cause remanded for further proceedings consistent with this opinion.
In a prior proceeding, Preston Crum and Marvin Crum were jointly tried for murder. The Public Defender's office was appointed to represent them originally, but withdrew as to Preston because of a conflict of interest. Robert E. Pierce assisted in the defense of Marvin Crum and Preston was apparently represented by other appointed counsel. Preston's conviction was subsequently overturned by the Supreme Court[1] because the trial court failed to sever his trial from Marvin's. The State is now seeking to reprosecute Preston, but in the interim, Pierce has become an Assistant State Attorney. Preston's defense counsel claims he will call Pierce as a witness[2] and therefore, pursuant to DR 5-101 and 5-102, Code of Professional Responsibility, the entire office of the State Attorney should be disqualified from prosecuting Preston.
At a hearing to consider defense counsel's motion, it was stipulated that attorney Sam Power handled Marvin Crum's defense; that Pierce was only present in court one or two days during the trial; and beyond that, Pierce was not involved in the first Crum trial. The State did not intend to call Pierce as a witness, nor involve him in any manner in Preston's prosecution. The trial court found that no transmission of confidential information relating to the Crums had occurred between Pierce and the Office of the State Attorney, nor was there a finding that such was a possible or likely occurrence.
The trial court's disqualification of the State Attorney's Office was based solely on the fact that the defense named Pierce as a possible defense witness and the court considered the State Attorney's Office a "law firm" for purposes of Canon 5. While the trial court was not specific as to which subsection(s) of the applicable disciplinary rules it determined was dispositive, from the record it appears that the relevant section is Disciplinary Rule 5-102(B):
If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until *589 it is apparent that his testimony is or may be prejudicial to his client. (Emphasis added).
There was no showing that Pierce's testimony would be prejudicial to the State, in any event.[3]
In Pantori, Inc. v. Stephenson, 384 So.2d 1357 (Fla. 5th DCA 1980), we recognized: "[A] trial court may decide after consideration of a motion alleging sufficient facts which, if true, would warrant removal of opposing counsel, that removal is mandated." 384 So.2d at 1359. We also stated in Pantori:
The purpose of the hearing is not to determine whether there has been breach of the Code of Professional Responsibility for which the attorney may be disciplined but whether, because of such breach one party has an unfair advantage over the other which can only be eliminated by removing the attorney. 384 So.2d at 1359.
While we recognize that Pantori involved civil litigants and the case at bar is a criminal one, we are not persuaded that the test should be different. The removal of an attorney requires some basis for a finding that the attorney's continued representation would make the proceedings basically unfair either to the client or a former client.[4]
We find no such basis in this case. Public policy dictates against forcing a disassociation between a client and his chosen counsel (in this case the duly elected state attorney) unless these circumstances exist.[5] In their absence disqualifying the entire state attorney's office merely for a possible violation of a Code of Professional Responsibility Disciplinary Rule is a departure from the essential requirements of law.[6]
CERTIORARI GRANTED; ORDER OF TRIAL COURT IS QUASHED.
ORFINGER and COBB, JJ., concur.
NOTES
[1] Crum v. State, 398 So.2d 810 (Fla. 1981).
[2] The purpose of calling Pierce is apparently to impeach the anticipated testimony of the defendant's brother. In support of their motion, the defense submitted the following transcript of prior testimony of the defendant's brother:

QUESTION: What made you change your mind about what was and what wasn't the truth?
MARVIN CRUM: Talking to my lawyers.
QUESTION: Have you been promised anything in exchange for your testimony, Marvin?
MARVIN CRUM: Yes, sir.
QUESTION: What Marvin?
MARVIN CRUM: Mr. Power, Mr. Bradley, and Mr. Pierce said if I was convicted of this, my brother and myself that they would try to get me just as least time as they could.
On retrial whether or not Marvin's testimony will conflict with the above is at this point conjecture.
[3] What may be prejudicial to a client will frequently be a different inquiry when the State is the client because of the affirmative duty of every public prosecutor to inform a defendant of the existence of evidence tending to negate guilt. Disciplinary Rule 7-103(B).
[4] See Thompson v. State, 246 So.2d 760 (Fla. 1971). We do not reach the question of whether or not all of the attorneys employed by the State Attorney in a particular judicial circuit should be considered as one "law firm" for purposes of Canon 5. We have concluded in another context that this may not necessarily follow where offices of a public agency are separated by distance and disparate responsibilities. Babb v. Edwards, 400 So.2d 1239 (Fla. 5th DCA 1981).
[5] See State Farm Mut. Auto. Ins. Co. v. Wright, 348 So.2d 1198, 1199 n. 2 (Fla. 3d DCA 1977).
[6] This opinion should not be construed as absolving a state attorney from personal responsibility for adherence to the Code of Professional Responsibility.